1
2
3              UNITED STATES DISTRICT COURT
4                   DISTRICT OF NEVADA
5    BRETT BARNES,                    Case No. 3:25-cv-00219-ART-CSD
6                        Plaintiff,    ORDER DENYING MOTION
7         v.
8    NORTHERN          NEVADA              (ECF No. 1-1)
     CORRECTIONAL CENTER, et al.,
9                       Defendants.
10

11          State prisoner Brett Barnes moves for a temporary restraining order or a
12   preliminary injunction requiring prison officials to immediately send him to an
13   ophthalmologist to treat right-eye vision loss that he purportedly suffered when
14   he had a stroke and atrial fibrillation on March 18, 2025, while housed in the
15   "hole" at Northern Nevada Correctional Center ("NNCC"). (ECF No. 1-1). Barnes's
16   motion is concerning, but because he has not filed a complaint,[1] this Court lacks
17   authority to grant him pretrial equitable relief. *See Pac. Radiation Oncology, LLC*
18   *v. Queen's Medical Ctr.*, 810 F.3d 631, 636–37 (9th Cir. 2015) (explaining "there
19   must be a relationship between the injury claimed in the motion for injunctive
20   relief and the conduct asserted in the underlying complaint" and "[a]bsent that
21   relationship or nexus, the district court lacks authority to grant the relief
22   requested"). And the motion is deficient because it is silent about how prison staff
23   knew and responded to the ophthalmologist's treatment plan.

24          The motion is denied without prejudice to Barnes's ability to file a new,
25   properly supported motion once he files a complaint. And because Barnes argues
26
27   _____
     [1] Barnes also failed to pay the full $405 filing fee or file an application to proceed
28   *in forma pauperis* for inmates housed at NNCC, one of which is necessary for this
     action to proceed. But that matter will be addressed in a separate order.

that he filed a motion rather than a complaint because his "need for treatment cannot wait out the grievance process to avoid further injury[,]" (ECF No. 1-1 at 2), the Court provides the following guidance to facilitate the filing of a properly formatted complaint and a renewed motion, if necessary.

**I.    DISCUSSION**

      **A.    Barnes must file a complaint to proceed with this lawsuit.**

"A civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. "A civil-rights complaint filed by a person who is not represented by an attorney must be submitted on the form provided by this Court or must be legible and contain substantially all the information called for by the Court's form." Nev. LSR 2-1. And the complaint must be signed personally by the unrepresented party. Fed. R. Civ. P. 11(a).

Barnes is advised that his complaint must contain all claims, defendants, and factual allegations that he wishes to pursue in this lawsuit. Barnes should file the complaint on this Court's approved prisoner civil-rights form. Barnes must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of the form.

Rather, in each claim, he should allege facts sufficient to show what each defendant did to violate his civil rights. For instance, Barnes might be trying to state an Eighth Amendment claim about indifference to his eye condition. Thus, Barnes may allege facts identifying prison staff and officials who knew about the ophthalmologist's treatment plan, when they knew that information, how they knew that information, and their responses, if any. And if Barnes does not know the true name of any defendant, then he must plead facts to show that information could be obtained with discovery, e.g., their rank, job title, age, gender, physical description; identify any acts or omissions of indifference; and state when each indifferent act or omission happened. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (explaining that although the use of "Doe" to identify

a defendant is not favored, flexibility is allowed in some cases where the identity of a party is not known before filing a complaint but can subsequently be determined through discovery).

**B.   Barnes is not required to plead that he exhausted available administrative remedies in his complaint.**

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust their available administrative remedies before filing suit. 42 U.S.C. § 1997e(a). "Exhaustion requires complying with a prison's critical procedural rules and is justified by the need to impose some orderly structure on the course of its proceedings." *Fordley v. Lizarraga*, 18 F.4th 344, 351 (9th Cir. 2021) (cleaned up) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)). "Requiring exhaustion serves other important objectives, including alerting prison officials to the nature of the wrong for which redress is sought, and allowing prisons to take corrective action where appropriate." *Id.* (cleaned up) (collecting cases). "Exhaustion also allows a prison's administration to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does not occur by leading to the preparation of a useful record." *Id.* (cleaned up) (collecting cases).

Importantly, it has long been the rule that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007) (emphasis added). Additionally, if the prison has regulations that call for expedited review of emergency grievances,[2] and the

---

[2] NDOC Administrative Regulation 740.07, effective April 28, 2022, establishes the "Emergency Grievance Procedure" for Nevada prisons and provides that such grievances must be "immediately delivered to the nearest supervisor" and "reviewed within 24-hours of receipt" and "[t]he department official receiving the

1  plaintiff's grievance qualifies under the operative regulations, then courts may
2  consider that procedure if the defendants raise failure-to-exhaust as an
3  affirmative defense to a prisoner's civil-rights claims. *See Fordley*, 18 F.4th at
4  353–58 (analyzing exhaustion of an emergency grievance about physical and
5  sexual assault).

6  
7  **C.    But pretrial equitable relief requires showing that prison staff or officials are knowingly disregarding a risk to Barnes's health.**

8  Barnes is advised that restraining orders and preliminary injunctions are
9  "extraordinary remed[ies] never awarded as of right." *Winter v. Nat. Res. Def.*
10  *Council, Inc.*, 555 U.S. 7, 24 (2008). The legal standard for obtaining a temporary
11  restraining order and the legal standard for obtaining a preliminary injunction
12  are "substantially identical." *See Stuhlbarg Intern. Sales Co. v. John D. Bush and*
13  *Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), *overruled on other grounds by Winter*,
14  555 U.S. at 20. The Supreme Court clarified the standard for these forms of
15  equitable relief in *Winter v. Natural Resources Defense Council, Inc.*, instructing
16  that the plaintiff "must establish that he is likely to succeed on the merits, that
17  he is likely to suffer irreparable harm in the absence of preliminary relief, that
18  the balance of equities tips in his favor, and that an injunction [or restraining
19  order] is in the public interest." 555 U.S. at 20. The Ninth Circuit also recognizes
20  an additional standard: "if a plaintiff can only show that there are 'serious
21  questions going to the merits'—a lesser showing than likelihood of success on the
22  merits—then a preliminary injunction may still issue if the 'balance of hardships
23  tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied.'"
24  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (2013) (quoting
25  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

26  
27  
28  _____

Emergency Grievance should respond to the filing offender no later than is
necessary to prevent serious injury or a breach of security."

1     But a plaintiff who seeks a mandatory injunction—one that goes beyond

2   simply maintaining the status quo during litigation—bears a "doubly demanding"

3   burden: "[he] must establish that the law and facts *clearly favor* [his] position,

4   not simply that [he] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740

5   (9th Cir. 2015). The Ninth Circuit has cautioned that mandatory injunctions are

6   "particularly disfavored" and "should not issue in doubtful cases." *Id.* (cleaned

7   up). And the PLRA similarly instructs that any restraining order or preliminary

8   injunction granted with respect to prison conditions "must be narrowly drawn,

9   extend no further than necessary to correct the harm the court finds requires

10  preliminary relief, and be the least intrusive means necessary to correct that

11  harm." 18 U.S.C. § 3626(a)(2).

12     As noted above, Barnes's motion is deficient because it does not state

13  whether prison staff or officials knew about the ophthalmologist's order, how and

14  when they knew about it, and how they've responded to that medical need. For

15  instance, the motion jumps from the ophthalmologist's treatment plan on March

16  25th to concluding on May 1st that "the prison has failed to address the eye issue

17  since it started" without reference to what happened in between. A prisoner

18  seeking a remedy for unsafe conditions does not have to await a tragic event such

19  as an actual assault before obtaining relief. *Farmer v. Brennan*, 511 U.S. 825,

20  845 (1994). But "[a]n inmate seeking an injunction on the ground that there is a

21  contemporary violation of a nature likely to continue must adequately plead such

22  a violation." *Id.* at 845–46 (cleaned up). And the inmate must demonstrate that

23  prison officials are "knowingly and unreasonably disregarding an objectively

24  intolerable risk of harm, and that they will continue to do so[.]" *Id.* at 846.

25  However, the fact "[t]hat prison officials' current attitudes and conduct must be

26  assessed in an action for injunctive relief does not mean, of course, that inmates

27  are free to bypass adequate internal prison procedures and bring their health and

28  safety concerns directly to court." *Id.* (cleaned up).

1  II.    **CONCLUSION**

2         It is therefore ordered that the Motion for Leave to Request an Injunction

3  (ECF No. 1-1) is denied without prejudice.

4         It is further ordered that Barnes has until June 4th, 2025, to file a signed

5  complaint.

6         Barnes is advised that this action will be subject to dismissal without

7  prejudice if he fails to timely file a complaint.

8         The Clerk of the Court is directed to send Plaintiff Barnes the approved

9  form for filing a 42 U.S.C. § 1983 complaint with instructions.

10

11

12         DATED THIS 5th day of May, 2025.

13

14

15  _____

16  ANNE R. TRAUM
   UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28